**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **STEPHEN SCOTT LANDES,** | § | |
| Petitioner, | § | |
| | § | |
| | § | **EP-20-CV-134-KC** |
| | § | |
| **THOMAS E. BERGAMI, Warden,** | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Stephen Scott Landes, Federal Prisoner Number 01788-151, petitions the Court under 28 U.S.C. § 2241 to intervene in his behalf and order Thomas E. Bergami, the Warden at his place of confinement, to release him from prison due to the COVID-19 pandemic. Pet'r's Pet., ECF No. 1, p. 8. His petition is denied because it appears from its face that his claims are unexhausted and, in the alternative, the Court does not have the authority to grant him § 2241 relief.

## BACKGROUND

Landes is a 30-year-old inmate serving a twenty-seven-month sentence imposed on December 9, 2019, after he pled guilty, pursuant to a plea agreement, to threatening and conveying false information concerning use of an explosive, in violation of 18 U.S.C. § 844(e). *United States v. Landes*, 1:19-CR-00080-RGA (D. Del.), J. Crim. Case, ECF No. 46. According to the factual summary attached to Landes' plea agreement, he engaged in "swatting"—the practice of making prank calls in an effort to get emergency services to dispatch police SWAT teams to a particular location. *Id*., Plea Agreement, Ex. A, ECF No. 27-1. "Swatting causes disruption and wastes resources and time of emergency services. Diverts attention from real emergencies and can cause a risk of injuries and psychological harm to the persons targeted and the first responders." *Id*., Sentencing Tr., ECF No. 53, p. 25. Specifically, Landes admitted that while

living in Roswell, New Mexico, he called an elementary school he had attended as a child in Georgetown, Delaware, identified himself as a local resident, claimed he held two fifth graders as hostages, communicated a bomb threat, and demanded a $20,000 ransom.  *Id*., Plea Agreement, Ex. A, ECF No. 27-1.  He also called a Walmart in Georgetown, identified himself as the same local resident, claimed he had a hostage, communicated a bomb threat, and demanded $20,000.  *Id*.  He then contacted the police in Georgetown, identified himself as the same local resident, and claimed he was going to kill himself.  *Id.*  His swatting was apparently an effort to get back at the Georgetown resident for allegedly swatting his wife.

At Landes' sentencing, the Court noted that his sentencing range according to the Sentencing Guidelines was eighteen to twenty-four months' imprisonment.  *Id*., Sentencing Tr., ECF No. 53, p. 56.  But it also noted that it was "obligated to impose a sentence that [was] sufficient but not greater than necessary to achieve the purpose of the sentencing."  *Id.*  It then explained that only an above-the-guidelines, twenty-seven-month sentence would meet that obligation:

> [I]n view of the seriousness of the offense, and notwithstanding some mitigating characteristics of the defendant, I think a modest upward variance is warranted. But I think three months above the top of the otherwise appropriate guidelines is what is an appropriate upward variance here.  So that's what I'm going to do.

*Id*. at p. 62.

Landes is currently incarcerated at the La Tuna Federal Correctional Institution in Anthony, Texas, with a projected release date of October 14, 2020.  *See* www.bop.gov/inmateloc (search for Reg. No. 01788-151) (last visited June 11, 2020).  He claims Bergami has wrongfully denied him an early release from prison under 18 U.S.C. § 3582, as amended by the First Step Act,

or § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). Pet'r's Pet., ECF No. 1-1, p. 4. He maintains Bergami erroneously believes his offense—threatening and conveying false information concerning use of an explosive—is a crime of violence which disqualifies him from early release. *Id*. at p. 3. He relies on *Johnson v. United States*, 135 S. Ct. 2551 (2015), to support his claim. He asks the Court to determine that his offense is not a crime of violence so that he may be "eligible for time credits and time off for nonviolent offenders." *Id.* at 8.

## APPLICABLE LAW

A writ of habeas corpus under 28 U.S.C. § 2241 provides the proper procedural vehicle in which to raise an attack on "the manner in which a sentence is executed." *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000). However, "[h]abeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.' " *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

During its initial screening of a habeas corpus petition, a reviewing court accepts a petitioner's allegations as true. 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It also evaluates a petition presented by pro se petitioner under more a lenient standard than it would apply to a petition submitted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it plainly appears from the petition and any attached exhibits

that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

## ANALYSIS

### A. Exhaustion

An initial issue which a court must address when screening a § 2241 petition is whether the petitioner has exhausted his administrative remedies. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). A petitioner seeking habeas relief must first exhaust all administrative remedies which might provide appropriate relief before seeking judicial review. *Id.*; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). Exhaustion means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

The Federal Bureau of Prisons ("BOP") uses a multi-tiered administrative remedy program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, the inmate must attempt to resolve the issue informally with the prison staff. *Id*. § 542.13(a). Then, if the inmate cannot resolve the complaint informally, he must file a formal written administrative remedy request on a BP-9 form directed to the prison warden. *Id*. § 542.14. Any adverse decision by the warden must be appealed to the appropriate regional director by filing a BP-10 form. *Id*. § 542.15(a). The final step in the administrative review process is an appeal to the Office of General Counsel on a BP-11 form. *Id*. If an inmate does not receive a response within the time allotted, he may consider the absence of a response a denial at that level and proceed to the next level. *Id*. An inmate may seek relief in federal court only after he has exhausted all levels of the administrative

review process.  *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (internal citations omitted).  Exceptions may be made only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review.  *Id.*

The BOP administrative review process, as described above, is available and wholly appropriate to address Landes' claims.  Landes maintains he verbally discussed his request for early release with both his unit manager and his warden, Bergami.  Pet'r's Pet. ECF No. 1-1, p. 4.  He avers they told him he did not qualify because his conviction was for a "violent" offense.  *Id.*  He does not suggest he pursued his claim any further.  If Landes had a meritorious claim, there is nothing to suggest that the BOP would not afford him relief through its administrative remedy process.  And if the BOP made an error concerning his request for early release, the BOP should be given an opportunity to correct the error before Landes is permitted to seek judicial intervention.  Indeed, an attempt by Landes to exhaust through the BOP administrative review process would clearly not be a patently futile course of action.  While "[i]t is true that exhaustion . . . takes time, . . . there is no reason to assume that . . . prison administrators . . . will not act expeditiously."  *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973).

Hence, Landes concedes he has not exhausted and dismissal is warranted on this basis alone.  *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming

dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies).   But even if Landes had properly exhausted, the Court would still not grant him § 2241 relief.

### B. Merits

Landis claims Bergami denied him an early release from prison under the First Step Act and the CARES Act.   Pet'r's Pet., ECF No. 1-1, p. 4.   He explains Bergami erroneously believes his offense—threatening and conveying false information concerning use of an explosive, in violation of 18 U.S.C. § 844(e)—is a crime of violence which makes him ineligible for an early release.   *Id*. at p. 3.

Section 844(e) provides:

> Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

18 U.S.C. § 844 (e).

Landes relies on *Johnson v. United States*, 135 S. Ct. 2551 (2015), to support his claim that Section 844(e) does not describe a crime of violence.   In *Johnson*, the Supreme Court held the definition of a violent felony in the "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e), was unconstitutional because it failed to survive the Constitution's prohibition on vague criminal laws.   *Id*. at 2557.   In *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Supreme Court extended Johnson's ruling to find the residual clause in the crime of violence definition in 18 U.S.C. § 16 was unconstitutionally vague.   *Id*. at 1207.   The ruling in *Johnson*

was further extended in *Davis v. United States*, 139 S. Ct. 2319 (2019), when the Supreme Court determined the residual clause definition of a crime of violence in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. *Id*. at 2324.

Clearly, there is some confusion about the definition of a crime of violence and when an offense may be characterized as a violent felony. Notably, § 844(e) does not purport to define a crime of violence. But this confusion is of no consequence here, because whether a prisoner has a conviction for a crime of violence is not determinative of whether he may receive early release from prison under the First Step Act or the CARES Act.

### (1) First Step Act

Until recently, only the BOP could move to reduce a term of imprisonment for extraordinary and compelling reasons. Then in late 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to file such a motion. 18 U.S.C. § 3582(c)(1)(A) (as amended). Extraordinary and compelling reasons could include medical conditions where "[t]he defendant is suffering from a terminal illness." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2019). Extraordinary and compelling reasons could also include situations where the defendant is suffering from a medical or physical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. But a defendant may pursue a motion to modify a sentence for "extraordinary and compelling reasons" only when he "has fully exhausted all administrative rights" or after "the lapse of 30 days from the receipt of such a request [to modify a sentence] by the warden of [his]

facility."   18 U.S.C. § 3582(c)(1)(A*)*; s*ee Mohrbacher v. Ponce*, No. CV 18-00513-DMG, 2019 WL 161727 (C.D. Cal. Jan. 10, 2019) (discussing modifications made to § 3582(c)(1)(A) by the First Step Act); *United States v. Curry*, No. CR 6:06-082-DCR, 2019 WL 508067 (E.D. Ky. Feb. 8, 2019) (discussing same).   And "[i]f petitioner . . . seeks to file his own motion for compassionate release, such a motion must be filed in the sentencing court."   *Brown v. Underwood*, No. 3:19-CV-1706-B-BN, 2019 WL 5580106, at *2 (N.D. Tex. Aug. 22, 2019), *report and recommendation adopted*, No. 3:19-CV-1706-B, 2019 WL 5579198 (N.D. Tex. Oct. 28, 2019) (quotation marks and citations omitted); *see also Dillon v. United States*, 560 U.S. 817, 827 (2010).   Here, the sentencing court is in the District of Delaware.   Hence, this Court in the Western District of Texas may not grant Landes relief under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act.

### (2) The CARES Act

Section 12003(b)(2) of the recently-enacted CARES Act provides authority for the Attorney General to place more prisoners in home confinement:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat 281.

Pursuant § 12003(b)(2) of the CARES Act, Attorney General William Barr issued a memorandum on April 3, 2020, instructing the BOP to maximize transfer to home confinement of

"all appropriate inmates held at . . . BOP facilities where COVID-19 is materially affecting operations." *See* "Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19" (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited April 22, 2020). The BOP is currently reviewing prisoners for release, removal, or furlough under the standards issued by the Centers for Disease Control and Prevention for persons at heightened risk from COVID-19. While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, it does not grant the courts the authority to place defendants in home confinement. *See United States v. McCann*, No. 5:13-52, 2020 WL 1901089, at *3 (E.D. K Apr. 17, 2020) ("the Court has no authority under this provision to order that a prisoner be placed on home confinement"); *United States v. Read-Forbes*, CR 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("the Court lacks jurisdiction to order home detention under this provision"); *United States v. Doshi*, No. 13-CR-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 21, 2020) ("the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons"). Hence, the Court may not order Landes into home confinement under the CARES Act.

### (3) Authority of the Bureau of Prisons to Place Inmates

The Court notes two statutes govern the discretion of the BOP to place an inmate in a particular facility: 18 U.S.C. § 3621(b), which addresses the imprisonment of a convicted person, and the Second Chance Act, which provides for post-imprisonment rehabilitation services.

Section 3621(b) grants the BOP the authority and discretion to designate the place of confinement. Under § 3621(b), the BOP:

>may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any pertinent policy statement issued by the Sentencing Commission[.]" *Id.*

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system . . . an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism. *Id*. The Act also addresses placement in a community corrections facility, such as a halfway house, or in home confinement. 18 U.S.C. § 3624(c). It grants the BOP Director the discretion, "to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." *Id.* "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of

sufficient duration to provide the greatest likelihood of successful reintegration into the community."  *Id*. § 3624(c)(6).

The BOP adopted regulations implementing the Second Chance Act, codified at 28 C.F.R. §§ 570.20–.22, effective October 21, 2008.   Both the statute and the regulations instruct the BOP to determine on the amount of time a prisoner should spend in residential reentry center "in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis."  *Id*.; 28 C.F.R. § 570.22.   Section 3621(b) instructs the BOP to consider:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).   The subsection adds, "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."  *Id.*

As a consequence, Bergami could, under the applicable statutes and regulations, properly consider the nature and circumstances of Landes' offense—threatening and conveying false information concerning use of an explosive—and the statements of the court that imposed the sentence—"in view of the seriousness of the offense . . . a modest upward variance is warranted"—before making a determination on whether to place Landes in a halfway house or in home confinement.

Furthermore, the Supreme Court has consistently held that a prisoner has no constitutional

-11-

right to be confined in any particular place.  *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner,* 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement.  *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971).  "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners."  *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).[1]

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'"  *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege . . ., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); *cf.*

---

[1] The statutory language in 18 U.S.C. § 4082(b) was re-codified through Pub. L. 94-473, Title 2 II, § 212(a)(2), Oct. 12, 1984, and is currently found at 18 U.S.C. § 3621(b).

*Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process.' ") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

### (4) Findings

Thus, after reviewing Landes' petition and the applicable statutes, the Court finds the BOP has exclusive authority and discretion to determine if and when to assign Landes to a residential reentry center or home confinement. The BOP may consider the nature and circumstances of his offense and the comments of the Court in making this determination. The Court further finds the record does not support a conclusion that Bergami acted "arbitrarily, capriciously, and in a discriminatory manner," violated the First Step Act, the CARES Act, 18 U.S.C. § 3621(b), or the Second Chance Act—or discriminated against Landes—with regard to his placement. As a result, the Court also finds Landes has not met his burden of showing he is in custody in violation of the Constitution or laws or treaties of the United States.

## CONCLUSIONS AND ORDERS

Accordingly, the Court finds that Landes has not only failed to exhaust his administrative remedies, but also has no constitutional or statutory right to early release or placement in a residential reentry center or home confinement. The Court concludes, therefore, that it appears from the face of Landes' petition and other pleadings that he is not entitled to § 2241 relief.

The Court consequently enters the following orders:

**IT IS ORDERED** that Stephen Scott Landes' "Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241" (ECF No. 1-1) is **DISMISSED WITHOUT PREJUDICE** for failure to

exhaust his administrative remedies.

**IT IS ALSO ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED this 15th day of June, 2020.**

_____
**KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE**